JAMES S. MARSH, PLAINTIFF IN ERROR, v. STEELE, JOHNSON & CO., DEFENDANTS IN ERROR.

Constitutional Law: ATTACHMENT OF PROPERTY OF NON-RESIDENTS. Section 200 of the code of civil procedure, which authorizes an attachment against the property of a non-resident without an undertaking, is not in conflict with any provision of the constitution of the state or of the United States.

ERROR to the district court of Nemaha county. The action there was by Steele, Johnson & Co. against Marsh and McPherson, to recover the amount due on a certain promissory note executed by Marsh to McPherson, and by the latter indorsed to plaintiffs. Upon affidavit of the plaintiffs that Marsh was a nonresident, an order of attachment issued and property of Marsh taken thereunder. Marsh moved to discharge the attachment on the ground that no undertaking had been given. Motion overruled by POUND, J. and exceptions taken.

*J. H. Broady,* for plaintiff in error.

Sec. 2, Art. IV, of Constitution of the United States, is intended to prevent such invidious discriminations against non-residents as is contained in the statute un-

Marsh v. Steele.

der consideration. Story on Const., sec. 1800. Cooley Con. Lim., 15, and note 397.

It will not do to meet this question by the assertion that "non-residency" and "citizenship" are not synonymous terms, and that therefore the Nebraska statute does not clash with the federal constitution.

Such an answer is founded on a technicality—a legal fiction invented by some courts to meet certain contingencies arising from the peculiar phraseology of state practice acts. In some instances, although the person has no fixed home, and is, as it were, a "wanderer on the face of the earth," and has no actual or real domicile, it has been deemed necessary by some courts by fiction to locate him an invisible, intangible, and unseen home; but these things are only done to meet certain contingencies, and are supposed to be necessary for such purpose. Such fictions are never allowed to stand in way of substantial justice. Take the case of attaching for non-residency as a good illustration, where the defendant is so living that personal service cannot be obtained upon him in the state, even if his technical domicile is here, and he has property in the state, there must be some holding to permit attachment or there is absolute exemption of all his property in the state from satisfying any of his debts. *Ward v. Maryland*, 12 Wall., 418. *Williams v. Bruffy*, 6 Otto, 176. *Gasstes v. Ballou*, 6 Pet., 761. The federal constitution means that the citizens of other states shall be governed by the same general rule as the citizens of the states. If it can be evaded by putting a very few of our own citizens in the same category with them by simply using a different word to attain practically the same object, the constitution is evaded indirectly, in a way that it can not be directly, which can not be done. The wrongful attachment of the property by an irresponsible plaintiff is very often a practical confiscation of de-

fendant's property without indemnity or any recourse for him; and in all such cases, if not wholly, is at least partially a practical confiscation. What better thing could the above quoted clause of the federal constitution mean than to prevent such consequences as flow from the above statute discriminating in favor of residents and against non-residents? It is a different thing to say non-residency is a cause of attachment. That is all right. That is necessary in order to acquire jurisdiction of the property of non-residents; for if it were not so, placing property out of the state of residency would be to place it absolutely and at all events beyond reach of creditors because no personal judgment could be had. Furthermore, non-residents are too far away for the plaintiff to know the ordinary causes of attachment, as removing or selling property to defraud, etc., and their persons being beyond the jurisdiction of the court, the fact of being so is a good substitute for their personal acts, that constitute cause of attachment. But still he is as much entitled to the indemnity bond, where the attachment is sued out because he is a non-resident, as where it is because he is charged with perpetrating a fraud. The charged perpetrator of a fraud has no stronger claims for security of property and its enjoyment, than the non-resident. On this bond question there is no difference between the resident and the non-resident, either in the circumstances, the nature of things, or the constitution and laws, and said statute comes fairly within the above cited constitutional inhibition. *Paul v. Virginia*, 8 Wall., 180. *Lemmon v. The People*, 20 N. Y., 607. *Slaughter House Cases*, 16 Wall., 118.

*Groff & Montgomery*, for defendants in error.

Counsel has admitted that the clause of section 198, authorizing an attachment on the ground of non-resi-

dence, is good. Is it not hair-splitting to say that the balance of the statute is not good? Does he not make a distinction where there is no difference? Counsel says that the reason for holding good that part of the statute authorizing an attachment on the ground of non-residence is to give the court jurisdiction of the property of non-residents. If the legislature may go this far who will say that it may not exempt the plaintiff from giving an undertaking for the same purpose? Such an immunity is clearly within the legitimate and constitutional province of state legislation, as we think is clearly established by the following authorities: *Conner v. Elliott*, 18 How., 501. *McCready v. Virginia*, 4 Otto, 391. *Harness v. Green*, 20 Mo., 316. *State v. Medbury*, 3 Rhode Island, 138. *People v. Colman*, 4 Cal., 46. *Insurance Co. v. Morse*, 20 Wall., 445. *Neff v. Pennoyer*, 3 Sawyer (U. S. Cir.), 274. *Chemung Canal Bank v. Lowery*, 3 Otto, 76.

*T. L. Schick*, on same side.

The term "non-resident" as used in the attachment law is a broader term and includes other classes beside "citizens of other states." A citizen of Nebraska, that is one whose domicile is here, may be a "non-resident" within the meaning of the attachment law. The statute contemplates actual non-residence without regard to domicile. *Haggart v. Morgan*, 5 N. Y., 422. *Frost v. Brisbin*, 19 Wend., 11. *Risewick v. Davis*, 19 Maryland, 82. *Matter of Thompson*, 1 Wend., 43. *Foster v. Hall*, 4 Humph., 346. Drake on Attachments, secs. 58, 59, 65. Is the provision for an attachment bond such a "fundamental right" as "belongs of right to the citizens of all free governments, and which has at all times been enjoyed by the citizens of the several states"? The proposition is its own refutation.

Many of the states at the present time do not provide for a bond.   There are numerous instances of the character of the provision in question, the legality of which has never been doubted or is well established. Thus, the right to vote and hold office—G. S., 360, sec. 29; the right of exemption from execution—G. S., 616, sec. 525; the right to take fish in the waters of the state—Cooley Const. Lim., 448; and the requirement of security of costs from a non-resident—*Smith v. Rosseter*, 11 Ill., 119; *Casey v. Houton*, 36 Ill., 234.   So the statute of limitations does not run as against a non-resident—*White v. Hight*, 1 Scam., 240; and a non-resident tax-payer cannot restrain the issuance of bonds of the county—McCahon (Kan.), 235.   So a non-resident may be denied the remedy by attachment altogether—Drake on Attachments, sec. 11; or be denied it as against a non-resident unless upon affidavit that the defendant has no property in the state where he resides—Alabama code, 1852, title 2, chapter 1.   In Pennsylvania attachment may be had against a non-resident as a matter of right without affidavit, while as against residents an affidavit is necessary.   Dunlap's Laws, Penn., pp. 740-746; Drake on Attachment, p. 575.   So none but resident females are entitled to the provisions of the bastardy act—Laws Neb., 1875, p. 53.   A non-resident may be prohibited from hawking and peddling without a license—38 Wis., 424, 439; and a license to sell liquor can be granted to no one but a resident of the state—G. S., 851, sec. 572; and so a county treasurer is authorized to collect fees from non-residents where he may not for the same service from residents—G. S., 382, sec. 20.

MAXWELL, CH. J.

Section 200 of the code of civil procedure provides that "where the ground of attachment is that the de-

fendant is a foreign corporation, or a non-resident of the state, the order of attachment may be issued without an undertaking. In all other cases the order of attachment shall not be issued by the clerk until there has been executed in his office, by one or more sufficient sureties of the plaintiff, to be approved by the clerk, an undertaking not exceeding double the amount of the plaintiff's claim, to the effect that the plaintiff shall pay the defendant all damages which he may sustain by the attachment, if the order be wrongfully obtained." Gen. Stat., 557.

It is claimed that the provisions of this section are in conflict with sec. 2, article IV, of the constitution of the United States, which provides that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

Kent says: "The privileges thus conferred are local and necessarily territorial in their nature. The laws and usages of one state cannot be permitted to prescribe qualifications for citizens to be claimed and exercised in other states, in contravention of their local policy."

It was declared in *Corfield v. Coryell*, 4 Wash., C. C., 371, that "the privileges and immunities conceded by the constitution of the United States to citizens in the several states were to be confined to those which were in their nature fundamental, and belonged of right to citizens of all free governments. Such are the rights of protection, of life and liberty, and to acquire and enjoy property, and to pay no higher imposition than other citizens, and to pass through or reside in the state at pleasure, and to enjoy the elective franchise according to the regulations of the laws of the state. But this immunity does not apply to every right, for some may belong exclusively to resident citizens of the state," etc.

Cooley, in his work on Constitutional Limitations, 397, says: "Although the precise meaning of 'privileges and immunities' is not very definitely settled as yet, it appears to be conceded that the constitution secures in each state to the citizens of all other states the right to remove to and carry on business therein; the right by the usual modes to acquire and hold property, and to protect and defend the same in the law; the right to the usual remedy for the collection of debts and the enforcement of other personal rights; and the right to be exempt in person and property from taxes or burdens, which the property or persons of citizens of the same state are not subject to. * * * But it is unquestionable that many other rights and privileges may be made, as they usually are, to depend upon actual residence; such as the right to vote, to have the benefit of the exemption laws, to take fish in the waters of the state, and the like. And the constitutional provisions are not violated by a statute which allows process by attachment against a debtor not a resident of the state, notwithstanding such process is not admissible against a resident."

The constitutional provision must be confined to those privileges and immunities which are fundamental in their nature—such as the right to acquire and hold property, to institute and maintain actions, the exercise of the elective franchise in conformity to the laws of the state in which it is exercised—and was evidently intended to abolish the common law disabilities of residents of the several states, the states to a certain extent being foreign to each other. This provision was not intended to prohibit distinctions founded on residence, such as the right to hold certain property exempt from execution; the right to fish in the waters of the state; the right to vote, and other rights depending upon residence.

The only objection in this case, and the one on which it is sought to dissolve the attachment, is that " the said order of attachment was issued without any undertaking in attachment, and is null and void, there being no undertaking in attachment."

At common law, if the plaintiff made an affidavit that the cause of action amounted to £10 or upwards, he could have caused the defendant to be arrested, and required him to put in special bail for his appearance in the action. 3 Blackstone Com., 287. Imprisonment for debt was not a satisfaction thereof, but a means to procure it. Imprisonment for debt existed in all the colonies at the time of the Revolution, but the law was repealed or modified in most of the states during the second quarter of the present century. As a consequence, the abolition of imprisonment for debt has led to an enlargement of the remedies acting upon the property of debtors, and the statute authorizes an attachment against the property of a non-resident debtor. Mere temporary absence of a party from the state is not sufficient to justify an attachment under this provision; the party must be a non-resident of the state. The writ is issued to secure the appearance of the defendant, and to retain his property within the jurisdiction of the court, to be applied in satisfaction of its judgment to secure the rights of the creditor, as otherwise the property of the debtor could be withdrawn at any moment, and the creditor compelled to go into another jurisdiction, perhaps at a great distance from his residence, to enforce his rights. These are provisions that apply to all non-resident debtors, whether they reside in the United States or foreign countries, and are in consonance with the rule in the administrations of estates, that " every nation having a right to dispose of all the property actually situated within it, has (as has

often been said) a right to protect itself and its citizens against the inequalities of foreign laws which are injurious to their interests." Story's Conflict of Laws, § 525.

And in relation to the withdrawal of funds it is said: "Persons domiciled and dying in one country are often deeply indebted to foreign creditors living in other countries, where there are personal assets of the deceased. In such cases it would be a great hardship upon such creditors to allow the original executor or administrator to withdraw those funds from the foreign country without the payment of such debts, and thus leave the creditors to seek their remedy in the domicile of the original executor or administrator, and perhaps there to meet obstructions and irregularities in the enforcement of their own rights from the peculiarities of the local law." Story's Conflict of Laws, § 512.

A plaintiff in attachment is liable in damages if he cause the defendant's property to be attached maliciously and without probable cause; and this liability attaches whether a bond is given or not. But the failure to give a bond when the attachment is against the property of a non-resident is not sufficient ground upon which to base a motion to dissolve the same, and is not in conflict with the constitution of this state or the United States, and was therefore properly overruled. And particularly is this true in the case at bar, where judgment was obtained against the defendant, of which he does not complain, and the order of the court is merely to apply the property to the payment of the debt. The judgment of the district court is clearly right, and is therefore affirmed.

JUDGMENT AFFIRMED.